Case number 221937, Joseph Johnson v. Clair Sootsman. Argument not to exceed 15 minutes per side. Mr. Wynn, you may proceed for the appellant. Good morning. Good morning, Your Honors. Adam Wynn on behalf of the plaintiff appellant, Joseph Johnson. I'd like to reserve three minutes for rebuttal. Very well. As the court knows, this is an Eighth Amendment excessive force case that arises from an incident that occurred in the Kalamazoo County Jail. What happened was captured on video from three angles. We submit none of them so clear as to preclude the relevance of eyewitness testimony as to very important details here, specifically how tightly defendant Deputy Sootsman grabbed onto Mr. Johnson's throat. Deputy Einhardt, who is right there, admitted to the investigators that she was, quote, shocked at how tightly Sootsman had plaintiff by the throat. Deputy Miller, who was also right nearby. There were three deputies to assist Deputy Sootsman, which really lends some doubt on the idea that he needed to use this force here. Deputy Miller testified that he was holding him tightly enough to control Mr. Johnson's entire body with that one hand. The district court granted qualified immunity to defendant on the basis that plaintiff had not presented evidence of a significant injury. We submit that as a clear violation of Wilkins v. Getty, which says that visible tissue damage is not dispositive of an Eighth Amendment claim. Your client did not obtain medical care in this case until after he filed suit, is that correct? That's correct. He might have requested it earlier while he was in prison or jail, but I guess the facts are that his request was put in the pocket of the officer and not communicated. When was he released from the jail? How long after this incident was he released from the Kalamazoo jail? I really don't know that. It was for a probation violation, so I would assume not longer than a couple months, but I don't know. Okay, so there's a gap here from his release from the jail until he files suit. Then after he files suit, he does go to medical providers, a couple of them. What troubles me is, I can explain why he didn't get medical care while at the jail, because they didn't honor his request. Once he's released, there's a substantial gap before he files suit, and he has no medical care at all. It's hard to see how the injury is very serious if it doesn't require any medication, any medical care, anything. That's where I would go back to Wilkins v. Gaddy, Your Honor. It says the core Eighth Amendment analysis is not whether a certain quantum of injury was sustained, whether the force was applied in a good faith effort. So we're talking about whether a sufficiently serious pain at the time of the incident. Good faith, that's the subjective prong, right? That would be the objective prong. In the Eighth Amendment, we have a subjective prong and an objective prong, and you've got to satisfy both, right? That's right. All right. Here, I think you might have circumstantial evidence as to the subjective prong. I've seen this video many times, and the defendant is waving his finger at your client. He's yelling at him. He's obviously upset, and then he grabs him and throws him on the floor. And although your client did take a small step in that direction, I think that's probably an issue of fact, whether that's a threatening gesture or not. And I think there's a lot of circumstantial evidence that perhaps there was ill will and malice to do this. But my issue was more of the objective prong. Okay, he grabbed him by the throat. It probably wasn't appropriate. He's actually cited for it by the authorities in the jail. He's pled guilty to assault and battery. But is that an Eighth Amendment cruel and unusual action or injury, I guess? And I think the case law says it has to be sufficiently serious. And does that exceed that threshold? And tell me why it does. Okay, I think the amount of force used was sufficiently serious. Once again, Wilkins says that the quantity of injury would be an indicia of the amount of force used. But what we're actually looking at is the amount of force or pain inflicted, whether or not that is sufficiently serious. And the magistrate's report concluded that this was a de minimis use of force. Black's definition of de minimis is something so insignificant that a court may overlook it in deciding an issue. I kind of agree with you. De minimis is not the standard for Eighth Amendment. But I think it is serious injury. It's not all injuries. And in view of the lack of medical care, how is this a serious injury? And the medication he finally gets is not... Tell me why this is a serious injury. I don't know that it is a serious injury. It's not a serious injury, so it's cruel and unusual punishment, even though it's a minor injury? That is what Wilkins v. Gaddy says. It's not whether a certain quantum of injury was sustained, but rather whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. Okay, that seems like it confuses the subjective wrong and the objective wrong. That subjectively you have bad intentions, it doesn't matter if you injure them or not. If you use a sufficiently serious non-de minimis amount of force that offends contemporary standards of decency, that's where you would start looking at the relationship between the amount of force that was called for versus the amount of force that was actually used. The other deputies that were on site said by the time they entered the hallway, Mr. Johnson, he may have been walking too fast, but he did not do any... And certainly by the time Deputy Stutzman stops him and he's standing against the wall, and the other deputies who are right there on site, most of these cases the police officers stick together. Here you've got three officers and you've got an investigator saying, this was completely uncalled for, Mr. Johnson was respecting his authority at that time. So I do think that on the objective prong, this does fit in between some of our cases, but are you aware of the Larry case where it was what we described as a karate chop that caused no injury? And we said that that was insufficient under the objective prong because the Supreme Court itself says not every push and shove is going to violate the Eighth Amendment. And so why isn't this just like what the Supreme Court said, that this was essentially a seven-second encounter, two seconds holding the neck, five seconds taking him down. So it's not clear to me on the objective prong. Even I agree with you that it's not about the injury, it's about the force. But the fact that the injury was so modest goes as pretty good evidence that objectively, that the use of force was pretty light. Yeah, well, here I would say that's a question of fact for a jury. In Leary v. Livingston County, the plaintiff expressly testified that it was a karate chop sort of deal that quote, didn't hurt or nothing. So there you have the plaintiff admitting, oh, it didn't hurt. There was another case recently out of Ohio I had, hold on, I had it cited, where the plaintiff admitted, I'm sorry, I don't have the citation, it's a non-published case, it's just used as an illustration where the plaintiff admitted that the officer did not apply any downward pressure on his throat. That is not what we have here. Plaintiff did say it hurt, he did request medical attention multiple times. Deputy Sutzman took one of those requests, folded it up, put it in his pocket and never turned it in. So our contention here is that if we go back to the language of Hudson v. McMillan, which says when prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency are always violated. The Eighth Amendment prohibition of cruel and unusual punishment necessarily excludes de minimis uses of physical force provided that the use of force is not of the sort repugnant to the conscience of mankind. You would concede at least that the minor use of force, the court has these various factors that we're supposed to take into account when determining whether there's a genuine issue of material fact on the subjective prong. And it seems to me, I think you have a point that the district court kind of muddled all these factors together, the objective and the subjective prongs. But I think you have to concede that the injury was quite minor. I would concede that. At least that's one of the key factors on the subjective prong, whether the officer intended to use the force with a malicious intent to injure, the fact that the injuries didn't require any medical care for over a year until after he sued, and the fact that he said that he was diagnosed with just, what was it, like kind of stubbornness or something. It's not stubbornness. That's not the right word, but just kind of modest neck harm. I mean, that's pretty good evidence, it seems to me, on the subjective prong when we go through these factors. Did any of the other officers testify that they saw the step? I didn't see any evidence that any of the officers indicated one way or the other on that. No, I don't think, I don't remember. Yeah, they say, they testify it was all out of the blue, but none of them suggested that they saw the very rationale for the officer's argument, which I've watched the video. It's a slow step. It may well have been negligent to think that that step was anything other than him trying to get back rather than approaching the officer. But that kind of distinguishes their testimony because they didn't testify that they saw the step. He clearly is saying he sees the step. The step is on the video. So that's another factor as was the use of force justified. There was the step being taken. There was a step being taken, but I would distinguish that and the subjective prong from what I think creates the genuine issue and material fact on the objective prong as to how much. Okay, so what creates the material fact on the subjective prong? If the officers who are testifying that he used this force out of the blue also don't indicate that they saw the reason for the force, it kind of minimizes their testimony, doesn't it? So much as to delete it from the record, I don't believe so. I believe that when you have three officers that are on site and they're standing right there, I don't recall that anybody ever asked them whether or not they saw the step. So that's just evidence that's not in the record. As far as the subjective prong. You're suggesting there's some sort of difference between a corrections guard in this instance just simply walking up to somebody and pushing their neck when they're just standing there doing nothing versus a slow step towards them that they correctly or incorrectly view as threatening so they push the person back in the wall. It seems to me there's a huge difference there. I think that would be reading the evidence in the light most favorable to the defendant to say that Deputy Suitsman actually did feel threatened by that step. At this point, I think it's... There's no question that he was disobeying Suitsman's commands, correct? No, I think there is a question on that. The other deputies testified that he was respectful and that he was obeying Suitsman's authority. Did anybody tell him he was free to go? I... Obviously the step itself was, in some respects, Suitsman told him to stand against the wall and then they're having this conversation. I agree with you that we have to take the aggressive nature of what Suitsman said, the offensive nature as to what Suitsman said, in the light most favorable to you, but there's no doubt that the... There's no evidence that the step itself was not disobedient in the respect of his walking away. Yeah, but even if that's true, if I would go back to this court's opinion in Lori v. Rodriguez, 659 Fed Appendix 837. Now that's a Fourth Amendment case, but I think we're talking. Where the plaintiff tossed a coat that he was told to remove at the officer and then the officer immediately took him down. This court said that the fact that he wasn't handcuffed didn't render the officer's actions reasonable. A Fourth Amendment case and an Eighth Amendment case are two very different standards. He's already pled guilty to a crime that says you have to honestly and reasonably believe that the force was necessary. There may well be a dispute of fact about whether it was reasonable to think this use of force was necessary, but the Supreme Court went out of its way to say that the Eighth Amendment, cruel and unusual punishment, is not every tort. And under your view of the law, it seems to me we're going a long way to essentially saying a negligence cause of action is an Eighth Amendment violation. Well, I would point out that Deputy Schussman did not plead guilty to just a common law tort assault claim. He pleaded guilty to an offense MCL 750.81. I believe the intent element, according to People v. Haney, Michigan Supreme Court case, is, quote, an intent to injure. And a justification defense would have been a complete defense, especially for police. But the justification defense is he has to honestly and reasonably believe that the use of force was necessary. And so in that respect, it adopts the same reasonableness standard that is a lower standard than the standard that you have to meet for purposes of the Eighth Amendment. Because it's like even if he was unreasonable, that's what the Supreme Court has repeatedly said, Whitley and others, just because an officer is unreasonable in thinking the use of force is necessary is not enough to establish an Eighth Amendment violation. He essentially has to have an evil intent to use force to inflict pain. And just because you're unreasonable in thinking the force is necessary is well below that intent. And it's hard for me to see why the step itself very well may be unreasonable, why that wasn't enough to give him to take this case from the jury on whether he had a malicious intent. I would just respectfully disagree, and I think that there is a genuine issue of material fact for a jury on whether or not the amount of force used was so out of proportion that it shocked other deputies on scene. I think the juries could agree with those other reasonable deputies that the mismatch between the slow step and the amount of force and the reaction that it incurred gives rise to a very strong inference of a malicious intent. Very well. Mr. Wynn, you'll have your five minutes rebuttal. May it please the Court, Richard Stokin on behalf of the defendant and appellate Claire Suitsman. I kind of want to leave, I want to start off with the whole story, because the video doesn't start just with Deputy Suitsman standing with a plaintiff in the hallway. It starts with the whole morning and the plaintiff's attitude and behavior the entire day. He was disruptive in the intake section. He's disruptive as he leaves the intake, and if you read through Deputy Miller, Deputy Miller wasn't even involved in the transport. He heard plaintiff being disruptive as he continued to leave the intake, and that's the only reason he followed the three of them out. So Deputy Suitsman is walking down the hallway. He hears the plaintiff continually ignoring commands from the two deputies who are escorting him, and the two deputies who were defendants in this case who have been dismissed, one of them was approximately six months on the job. One of them was, I think, two and a half years on the job. And they admitted, I believe Deputy Einhardt admitted, and she was reprimanded for not handcuffing him because he was disruptive. So he should have been handcuffed. He should have been restrained because of his behavior prior to this. Can we just switch to the objective prong quickly? And it seems to me the district court may have erred. If there was no evidence of an injury, this may very well look like the Leary case. But the district court suggested that his request for medical help was self-serving and disregarded on that basis. But it was admissible evidence. It was testimony under oath. I think we have to accept that as a fact, and the district court just erred. So does that take this out of the objective prong, the fact that he requested medical attention immediately? And then it is a year and a half later, but it does distinguish Leary, the fact that he did seek medical treatment. So how do those factors make this case satisfy or not satisfy the objective prong? One, just briefly, he was only there, I think he was there two weeks before he got released. He had some complaints of pain when he was there. Now, Deputy Suitsman, once he gets to his cell, Deputy Suitsman has nothing else to do with him. The plaintiff, this wasn't his first time in the jail. He knows the routine. He knows the process. He knows how to make complaints. He knows how to request medical. So although he did testify that he claims he did, I'm not sure that's quite believable that he didn't know the process or couldn't follow up on it. And I think it's also a red herring when the plaintiff brings up the fact that Deputy Suitsman had the complaint and he did nothing with it. He was out for several other days because you're on shift and you're off shift. He comes back several days later, somebody hands him the thing and he takes it, puts it in his locker, I believe, where he testified to. That has nothing to do, there was no claim about that. There was no claim that Deputy Suitsman was deliberately indifferent or anything regarding any treatment provided to plaintiffs. So I think that whole thing is a red herring. And when you look at whether plaintiffs suffered any actual injury, he testified he doesn't even remember a whole lot of what even occurred. I believe that was his testimony. The district court pointed that out. I mean, we do. So he does, it's undisputed that he requested medical attention. And then he, and doctors, it was tightness in the neck is what I was thinking of. Tightness in the neck. Doctors prescribed physical therapy and he says prescription drugs. That's certainly different. The Supreme Court has said it's about the use of force, not the seriousness of the injury. But the lack of, our case law suggests the utter lack of an injury is pretty dispositive evidence that it was just like the push and shove that the Supreme Court said. But here, I mean, there is some evidence of a minor injury which could take it out of the objective prong. I would say there's evidence of a complaint of pain. He interviewed during the internal investigation several weeks later and said he had some pain, but he had no visible signs. And he didn't even complain, seek medical attention at that point in time either. So that goes to your whole de minimis minor, if there was any injury at all, he may have suffered some discomfort. And I think that's where, when you look at the actual facts and look at the testimony and look at the reports, there may have been some discomfort there. But there certainly was no evidence of injury, of actual injury. How about the subjective prong, whether there's circumstantial evidence of malicious intent enough to go to the trier of fact, or whether we can decide this as a matter of law. I mean, on the video, your client is waving his finger at the plaintiff, and he is animated, he is obviously upset, he's mad, and then he grabs him by the throat. Isn't that enough circumstantial evidence to go to the jury on whether he has malicious intent or whether he feared for his safety by that step? I mean, the jury, even though his testimony is that that step he viewed as threatening, the jury doesn't have to accept that, do they not? I mean, the jury could say, yeah, that's his explanation, but we don't buy it. We see him really animated and mad at the plaintiff, and we don't really think the step did it. I mean, isn't that an issue of fact for the jury? Well, I think, one, we have to put it into perspective of what was occurring at the time, and I think the district court did that. The plaintiff was not paying attention to and not following any of the orders of any of the deputies, specifically the two deputies he was supposed to be following. We don't know at the time right before he grabs his throat and he's pointing his finger and he's animated and he's mad at the plaintiff. We don't know what's, well, we do know. He said, the plaintiff says he called me a pussy, called me a pussy, and your client says, no, I said act like a man. You're not acting like a man. And then he grabs him. And this pussy comment, not acting like a man, isn't that at least circumstantial evidence of perhaps a malicious intent? I don't believe so, and I think you are correct. He's animated and he's pointing at him and he's using a loud voice. He's using a loud voice against somebody. You're not acting like a man. You're not acting like a man. Act like a man. And he's trying to maintain order within the jail, and he's got commands for him to stand up against the wall, and then he leans towards the wall, steps away from the wall towards Deputy Suitsman. Now, I think what's also interesting, I think Judge Murphy brought it up. Can you answer my question? The jury doesn't have to accept his explanation that he felt threatened by the step, do they? Well, I think the question is whether the use of force was reasonably plausible. Okay, I'm talking about intent. I'm talking about your client's intent, whether he had malicious intent or not, and how you say we should rule as a matter of law that as a matter of law he had no malicious intent. I mean, I don't quite buy that. Well, I certainly think on the objective standard. Okay, well, that's a different issue. Correct. That's a different issue, but let's talk about subjective issue. Do you concede, I guess, do you concede that there is issue of fact as subjective intent? I don't believe there was any evidence or any testimony submitted that showed there was any malicious intent by Deputy Suitsman to injure the plaintiff. When you look at what even Deputy Einhardt's testimony, when he reached out, and when you watch the video, she testified, he reaches out, the hand hits the chest, it goes up to the, it does go up to the neck, and that's, you can see that on the video. But when you see when he reaches out, he wasn't reaching out, you can clearly see on the video, he's not reaching out grasping at the neck. He's reaching out towards the. Okay, so he might have malicious intent, but it's not to injure. It's just to restrain, and maybe he restrains him improperly. It certainly was to push him, but to gain control of him. I don't think it was, I wouldn't use the word malicious. Are there any cases that say if you're reaching out to control somebody, that we add the word malicious to that? That's their job to control prisoners who, at least allegedly, are not following their directions. Correct. And that's what he did here. And I think, and also the district court, I thought, did the appropriate analysis, gave the appropriate weight to the video, because when you watch it, it's seven seconds in total. I think the whole interaction is 45 seconds. There is no, there are no striking, hitting, punching, kicking, none of that. So presumably, if he had just, if his hand had landed on and stayed on the person's chest, and pushed him back against the wall to get him away from him, we wouldn't be here. So it's really the question of the import of apparently his hand sliding up and encountering his neck for something less than two seconds. I would agree, and I also want to point out, when Plaintiff mentions the internal investigation and the policy violation, Lieutenant Timmerman, or as Captain Timmerman really was, testified that the violation was because he made contact with the neck. And the policy is you can't make any contact with anybody's neck unless it's the last resort. So you're exactly right. If he tests, if he hits the top of the chest and holds on the top of the chest and the hand doesn't slip up towards the throat, there would have been no internal investigation, no internal finding of any violation of policy. And odds are we would not be here because the other deputies wouldn't have been able to testify that it was to the neck and to the neck. And when they testified that it was shocking, that they were shocked by Deputy Suitzman's reaction, well, none of them testified they saw the video. They didn't watch the video. Specifically, Deputy Miller testified when I asked him, well, would you defer to the video if it conflicted with anything in your reports? And he said, yeah, I would defer to the video. So I think their testimony when they said there was no reason for him to have any contact with Plaintiff whatsoever completely ignores the fact that the Plaintiff did step off the wall and towards Deputy Suitzman. And their argument that, well, he just wanted to go to his cell. And I'm not sure that's reasonable. No reasonable jury is going to believe that. It's not plausible that he just has a right to walk away from the deputies and go to his cell because he feels like it. So I think it's clear Deputy Suitzman had a reasonable, was reasonable in the ability to use force against the Plaintiff. Would this case be any different if his hand had gone directly to the neck and not attempted to push him back by the chest and then his hand moved up? It would have violated policy, right? It certainly would have violated. But policy doesn't establish constitutional dimensions. So would it have violated the Constitution? I don't think necessarily. I think then it would become more of what actually happened. Was he chopping toward the neck? Was he going to the neck? But, again, even if he goes to the neck, much like a karate chop, if he's not causing any injury and it's not, there's no intent to injure it and he actually has a re-justification for using the force that he's using, no, I don't think that would violate the Constitution because you have, in this environment, they have the ability and the authority to maintain order and safety. And that's what would have, in the example you're giving, as long as there was no other background information. I think a lot of the cases, some of the cases plaintiff cites, there was a history between the deputy or the officer and the inmate. In this case, there wasn't any in this case. There was no indication that Deputy Suitsman, other than when he was upset with the plaintiff for not following commands as he's walking down the hall and walking up behind him and trying to pass them, Deputy Suitsman didn't have any interaction with him earlier that day. So there was no surrounding facts to say he had any ill will or intent. I believe it was Cordell where the deputy was pulling the inmate out and rammed his head into the wall. Well, there was a reason that he did, at least an implied reason why he did that. He was upset with the way the person was behaving. Where in this case, there's just none of those facts. And I do want to address briefly in my time left, he talks about the plea to assault and battery. And I think we just simply disagree on the elements. He pled to assault and battery and Deputy Suitsman testified to it. And I think it goes without saying. He pled guilty to it. He had, I think, a $500 fine, no probation, nothing else. He had retired. He walked away. And that's why he pled guilty to it. He got bad advice. He should not have done that. But there was no – the pleading guilty to that does not stand for the proposition that he had malicious intent or that he intended to injure by his guilty plea on that. And also, even if it did, the plaintiff waived that argument. And the district court pointed that out. They waived that argument. They didn't raise that argument in the lower court, that that precluded Deputy Suitsman from arguing that it wasn't an Eighth Amendment violation. And lastly, briefly on the qualified immunity issue, I believe they also waived that in the lower court. They didn't point any case out that actually put Deputy Suitsman on notice that he was violating constitutional rights by his actions. Now, they do cite that Brown v. Lippard, they mention it's a Fifth Circuit case. And they mention that. We cited that multiple times in our briefs. And I believe they cited it twice in the lower court. But they never explained it. They never tried to distinguish that case and to say anything about that case. And I believe in that case it was where an officer struck an inmate in the back of the head several times. Again, those facts aren't similar to this. There was nothing in the record to put Deputy Suitsman on notice that he – that his actions would have violated or intended to violate plaintiff's constitutional rights. And I think as plaintiff's essentially asking for – he's asking this court to say that any touching of a plaintiff, any touching of an inmate in this type of setting is minimum as a question of fact gets to go to a jury whether or not the Eighth Amendment rights were violated. And I just don't believe that's the case. I believe the district court appropriately viewed the evidence, appropriately viewed the video, gave appropriate weight where it was necessary, and found questions – didn't find question – every answer – question answered by the video, but certainly the most important one specifically whether or not there was an Eighth Amendment violation. And again, even if there would have been qualified immunity to apply because they simply didn't have – establish any cases on point that would have put my client on notice. Unless there's any other questions. I have none. Thank you. Thank you, Counsel. All right, rebuttal. Mr. Wynn. Thank you. Respectfully to Counsel, what I heard there was a variety of what might be good jury arguments. We heard there wasn't pain and there was mere complaint of pain. And that is the same as the magistrate's report deciding that plaintiff's testimony was self-serving and ignoring the record facts that he did request medical attention after the incident. As to the subjective prong, I was just looking back at the magistrate's report. The magistrate's report, and therefore the district court's opinion, does not come to a clear conclusion that there is not a genuine issue of meritorial fact in the subjective prong. I read the district court opinion as saying that it fails on the objective prong. That's correct. Why did – the district court's opinion goes through all the factors that are on the subjective prong. So I think it was somewhat muddled, or the magistrate report. I just didn't read it coming to a conclusion as the subjective prong. Yeah, that was my difficulty with the case as well, is I did not see a conclusion on the subjective prong. Okay, now even if there's malicious intent to strike or to touch the plaintiff, is there malicious intent to injure him? I mean, I guess we infer because he touched his neck that he intended to injure as opposed to restrain. I mean, in the jail setting, you're not supposed to restrain by the neck other than a last resort, and this isn't the last resort. But, you know, you can restrain people by grabbing a neck. That doesn't mean that necessarily that you intend to injure them by restraining them by the neck. And how do you get past that? I would first of all go back to the fact that under Michigan Supreme Court precedent, the intent element of the offense that Deputy Sitzman pled guilty to is, quote, an intent to injure. That is, People v. Haney. So there's that, and then I think there's just circumstantial evidence between the mismatch, between the amount of force used, which I think Judge McKeague was firm to Judge McKeague's opinion in Hanson v. Madison County, which had very similar facts. There was an officer who made a, it was found in that case that a push to the upper chest and neck area, a brief push after the inmate had been mouthing off directly before that, was de minimis. I would point out that that is originally what Deputy Einhardt, who is an eyewitness, said, is that, you know, oh, I thought it was more towards the base of the neck and the chest. Then she was impeached with her statement to Captain Timmerman, who is the investigator, that she was, quote, shocked at how tightly Deputy Sitzman was holding plaintiff's throat. And she said, well, if I said that to Captain Timmerman, that must have been correct. So that is evidence in the record that he was holding the throat tightly. So intending to injure by the degree that he's holding the throat. Okay. All right. Any further questions? No. All right. Thank you, Mr. Wynn. Case will be submitted. I believe that concludes our oral argument docket for the day. You may adjourn the court.